## In re 4145 BROADWAY HOTEL CO.

### THOMAS et al. v. ROSSETTER et al.

### No. 7497.

Circuit Court of Appeals, Seventh Circuit.

Feb. 11, 1941.

Morton John Barnard and Lloyd C. Whitman, both of Chicago, Ill., for appellants.

Bernard Nath and Isaac E. Ferguson, both of Chicago, Ill., for appellees.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This is an appeal from an order of the District Court authorizing the trustees of a reorganized debtor corporation to obtain a mortgage loan of $110,000, the proceeds of which they were to use to discharge its tax indebtedness and rehabilitate its property. The order also continued in effect an injunction theretofore entered by the court restraining appellant Thomas from soliciting powers of attorney or using any theretofore obtained, for the purpose of terminating the trust agreement under which appellees, the trustees, were then operating, or interfering with the placing of the loan authorized by the order complained of; and held that the trust agreement had not been terminated nor the trustees removed by the attempts of Thomas in derogation of the injunctional order then in effect.

We deem it unnecessary to recite the history of the debtor proceeding—it involves a hotel property with an enormous burden of unpaid taxes which the trustees, originally appointed by the court in 1935, are endeavoring to liquidate under the jurisdiction of the court. In May, 1938, it became evident that appellant Thomas, a real estate broker who had been endeavoring to obtain a lease of the hotel for various clients of his, and who had at some time subsequent to his entry into the proceedings purchased five shares of the participating trust for $25, was trying to obtain a general review of the reorganization and was sending out letters to all

certificate holders making serious charges against the management of the property by the trustees. Because it appeared to the court that the charges were made for the purpose of compelling the trustees to enter into a lease with his client so that he could obtain commissions thereon, and that the investigation demanded by him would result in large expense for the trust estate, he denied Thomas leave to file his various petitions, and enjoined him from sending out any further communications to the certificate holders until further order of the court. We affirmed that order on appeal (In re 4145 Broadway Hotel Co., 7 Cir., 100 F.2d 7), and also denied appeal from subsequent denial of a motion to vacate the injunctional order. That order still remains in full force and effect, and since it is again in issue in the case at bar, we set it forth in full in the margin.[1]

The trust agreement approved by the court in 1935, provided for termination of the trust on May 1, 1945, or earlier by resolution of two trustees, or consent of certificate holders. It also provided for biennial referendum elections, the first on May 1, 1937, for the purpose of determining whether or not the trust should be continued, and that the trustees might be removed at any time by registered holders representing not less than a majority of the stock, by a written instrument executed in triplicate.

Notwithstanding the injunction then in effect, restraining Thomas from soliciting powers of attorney or using any theretofore obtained, upon the referendum in May, 1939, he voted three hundred and fifty-nine powers of attorney then held by him, for termination of the trust. Many of these, however, were for holders who had voted personally for the continuation of the trust. The trustees, therefore, announced that the vote was favorable to continuation of the trust, whether all the votes wrongfully cast by Thomas on his powers of attorney were disregarded or only those for the holders who voted in person. Thereafter, the trustees began negotiations looking toward a reduction of the tax indebtedness, and obtaining a loan on the property sufficient to liquidate the reduced amount of taxes and provide a fund for rehabilitation of the property. In May 1940, they filed their petition asking for approval of plans to obtain a commitment to borrow $110,000, setting up an arrangement whereby they expected to be able to pay up the taxes in full, in accordance with the terms of a settlement tentatively agreed to by counsel representing the taxing authorities. The court approved the tentative plans and authorized the trustees to take all steps necessary to obtain the loan, discharge the taxes and rehabilitate the property. Thereafter, the trustees duly notified the certificate holders, in accordance with the terms of the trust agreement which provided that they must be given written notice of any plan to mortgage the property, and that if thereafter the holders of more than one-third of the certificates signified their dissent from the mortgage, the trustees should not consummate their plan.

Thomas, notwithstanding the injunction still in effect against him, sent out two letters to certificate holders. In the first he notified them that he held powers of attorney from far more than a third of the total number, and if he entered dissent or objections, there would be good reason for it, and advised them not to be misled by a letter the trustees might send. In the sec-

---

[1] "This matter coming on to be heard upon the petition of George W. Rossetter, Jay C. McCord and Maurice A. Rosenthal, Trustees under trust agreement dated May 1, 1935, praying for the entry of a restraining order against F. Gerald Thomas, and on the reply of F. Gerald Thomas hereto, and said F. Gerald Thomas having admitted that he mailed to the holders of participating certificates of 4145 Broadway Hotel Company the communication, an exact copy of which is annexed to the petition of said Trustees, and the court having heretofore on May 5, 1938, entered an order temporarily restraining said F. Gerald Thomas, and the court having stated that the action of said F. Gerald Thomas in sending such communication to said certificate holders is in contempt of the court thereupon, with the consent of F. Gerald Thomas.

"It is Ordered that said F. Gerald Thomas, his agents, attorneys and employees, be and each of them is permanently enjoined and restrained until the further order of this court, from mailing or sending any further communications to the holders of participating certificates of 4145 Broadway Hotel Company and from soliciting or accepting any powers of attorney from such holders of participating certificates and from using or attempting to use any powers of attorney heretofore obtained by said F. Gerald Thomas from holders of such participating certificates."

ond he criticized the loan and the plans for discharge of taxes and rehabilitation, in spite of the fact that the court had already, after hearing on the petition of the trustees, approved the entire arrangement. Needless to say, the record does not show that the letter was submitted to the court for approval before it was sent out, as might have been considered necessary in view of the injunctional order never vacated. The letter stated that Thomas would, if he held power of attorney for the certificate holder, vote it for dissent unless otherwise advised by the holder, and suggested that if he did not hold such power of attorney, the holder might sign and send one to him before the date for the vote, or might vote directly in dissent. The trustees attached copies of these two communications to a petition asking for:

1. Approval of the form of the mortgage documents and authorization to take all steps necessary to consummate the loan;

2. A finding by the court that the trustees had in all matters acted in accordance with the provisions of the trust deed and the plan of reorganization approved by the court; and that the making of the mortgage had been dissented to by less than one-third in amount of the holders of participating certificates; and

3. An injunction against Thomas, his agents and attorneys from interfering with the consummation of the loan, the rehabilitation of the property, or the satisfaction of the tax liability against the debtor property.

To this petition Thomas and one Golding, a certificate holder (of two hundred and fifty shares of the trust), filed their answers setting up substantially the same facts, that the trust was terminated by the referendum of May, 1939; that over a third of the certificate holders dissented from the placing of the mortgage as contemplated by the plan then before the court for consideration on the petition of the trustees; and that the trustees were validly removed by service upon them on June 15, 1940, of an instrument in writing to that effect, duly executed in accordance with the provisions of the trust agreement, by a majority of the certificate holders. Other certificate holders of small amounts of stock also filed answers.

After a full hearing on the petition of the trustees and the answers thereto, the court found that it was to the best interests of the debtor and the certificate holders that the new mortgage be consummated, and that for the protection of both debtor and its shareholders, the status should be restored as of the time of the entry of the injunction order, and all acts of Thomas in violation of that order should be set aside and declared of no effect; that Thomas had obtained powers of attorney through material misrepresentations and omissions of material facts, in general communications to the certificate holders, and that those powers were therefore void, as was his attempt to remove the trustees by the written instrument of June 15. Golding joined Thomas in his appeal to this court.

We find ample evidence of record that appellant Thomas "deliberately, wantonly and brazenly violated and defied the injunction order of this (the district) court." Certainly there is no ambiguity about the order which restrained Thomas from mailing or sending *any* communications to certificate holders until further order of the court. That order was broad enough to cover all such interference with the jurisdiction of the court which it had expressly retained in its order confirming the plan of reorganization. We have already upheld the validity of that injunctional order. In re 4145 Broadway Hotel Co., 7 Cir., 100 F.2d 7. We think there can be no question as to its scope. Appellant, however, argues that it was limited to the sending out of communications related to his petitions for removal of the trustees and charging them with irregularities in May, 1938. We find no such limitation in the order.

Appellant also contends that, assuming that his powers of attorney were obtained by misrepresentation, which he denies, but which we find ample evidence to sustain, only those persons who executed them have a right to complain of the misrepresentation, and to object to their use. This is not true, in view of the fact that the court's order was for the protection of its own jurisdiction to be exercised in the interests of the debtor and all its shareholders. Given the power to enter the order for such purposes, the court has equal power to enforce that order, and to set aside or undo anything done in derogation of it. See Bien v. Robinson, 208 U.S. 423, 28 S.Ct. 379, 52 L.Ed. 556; Bissell v. Besson, 47 N.J.Eq. 580, 22 A. 1077; Springfield Ins. Co. v. Peck, 102 Ill. 265. There

642

was, therefore, no error in the action of the court in declaring the various acts of Thomas pursuant to the wrongfully obtained powers of attorney void and of no effect.

Decree affirmed.