In re LYMAN RICHEY SAND & GRAVEL CO.

O'LEARY et al. v. CURTIS et al.

No. 220.

District Court, D. Nebraska, Omaha Division.
Nov. 5, 1941.

Kennedy, Holland, DeLacy & Svoboda, of Omaha, Neb., and Ryland, Stinson, Mag & Thomson, of Kansas City, Mo., for ancillary plaintiffs.

Wells, Martin & Lane, of Omaha, Neb., and Wagner & Wagner and Walter, Flory & Schmid, all of Columbus, Neb., for ancillary defendants.

DONOHOE, District Judge.

The controversy in this proceeding is an outgrowth of reorganization under section 77B, 11 U.S.C.A. § 207. Lyman-Richey Sand & Gravel Company commenced proceedings for the reorganization of the corporation under section 77b of the Bankruptcy Act. In the course of those proceedings, Mr. G. Keyes Page was appointed reorganization manager by the Court, and in due time he presented a plan of reorganization bearing the approval of the debtor and the stockholders holding over 77% of the outstanding capital stock, including the members of the Curtis family, who are made ancillary defendants herein.

In substance, the plan of reorganization, among other things, provided for the organization of a new corporation to which the debtor was to convey all of its assets, and for which in turn the new corporation would assume certain of the indebtedness of the debtor. The voting rights in the new corporation were vested exclusively with the holders of the common capital stock; that there should be issued non-cumulative preferred stock, which was to be sold for the purpose of securing new capital and ready cash for the operation of the company, and that the new corporation would have authorized 42,250 shares of its common capital stock of the par value of one cent per share, which should be issued in the following manner:

18,998 shares to the holders of the present outstanding capital stock of Lyman-Richey Sand & Gravel Company;

23,252 shares to the purchasers of the 6% prior preference stock of the new corporation.

Thereafter, on the 2nd day of July, 1935, the proposed plan of reorganization, as so approved, was submitted to the Court for its consideration and approval, and on said date, a decree was duly entered approving the said plan of reorganization in all particulars, except that in the sixteenth paragraph of the decree jurisdiction was specifically retained as follows:

"16. This Court hereby specifically retains jurisdiction over the assets dealt with and over any and all persons, firms, or corporations to whom said assets may be transferred, and over all parties appearing in these proceedings for the purposes of (1) fixing all allowances and authorizing the payment of all expenses in these proceedings, (2) seeing that the Plan is consummated and carried out substantially in accordance with the terms and provisions thereof, or making such changes or modifications therein in the manner authorized and provided in Section 77B of the Bankruptcy Act, (3) carrying out and giving effect to any and all provisions of the Plan, to the order confirming the same, and to orders entered herein, in so far as they affect and apply to any tax liabilities of the United States of America, and (4) for all other purposes."

Thereafter, on the 18th day of July following, a final decree was entered by the Court under a report and petition of the debtor and G. Keyes Page, reorganization manager, filed pursuant to an order of the Court, and from which it appeared that the plan of reorganization theretofore confirmed by the Court had then been fully and completely executed, carried out and accomplished, and after due examination and consideration of the report, the Court made and entered its findings and decree accordingly, and thereupon decreed "that the plan of reorganization heretofore confirmed by this Court is hereby declared to be in all respects fully executed, carried out and accomplished." No jurisdiction for any purpose was retained by the Court, but instead it was decreed "That the proceedings in this Court entitled 'In the Matter of Lyman-Richey Sand and Gravel Company, Debtor, In Proceedings for the Relief of Debtors, No. 5268' be and the same are hereby terminated and finally closed."

Thereafter, on the 22nd day of April, 1941, the ancillary plaintiffs commenced this action by filing an ancillary bill in equity, in which they seek the decree of this Court protecting them in their title and ownership

to the common stock sold pursuant to the plan of reorganization, and for an injunction against the ancillary defendants from further litigating their rights to ownership and enjoyment of said stock under the decree of this Court, said injunction to protect and enforce the former orders of the Court. To the bill in equity, the ancillary defendants have filed an answer, in which the following allegations are made:

"To induce the Debtor and its majority stockholders to accept said Plan of Reorganization, the said G. Keyes Page, who urged its immediate acceptance in the form presented, represented to the officers, directors and majority stockholders of the debtor that the provision in said Plan for sale of said 23,252 shares of treasury stock to the purchaser of the Prior Preference Stock, was a mere legal form, meant to give added protection to said purchaser, pending call of the Prior Preference Stock and that when said Prior Preference Stock had been called and retired on the prescribed payment, the pledge would be satisfied and the certificate for the treasury stock would be promptly returned to the reorganized corporation on reimbursement of the buyer for the nominal one cent per share sale price which he said to pay in the first instance.

"Believing the said representation to be true and correct, having confidence in the ability, knowledge and honesty of the said G. Keyes Page and also in the integrity of his principals, Sterm Brothers and Company and Lester T. Sunderland, and respecting the latter's reported request that his connection with the transaction should be kept secret, the said stockholders and Debtor approved and accepted the said Plan without requiring amendment thereof to more clearly express the said interpretation thereof by the said G. Keyes Page. In so doing, the said stockholders and Debtor confidently relied upon the said representations made by G. Keyes Page and accepted his statement that under the circumstances it was not necessary to change the language of the Plan of Reorganization."

The prayer of the answer in substance is that the alleged sale of the 23,252 shares of common stock should be rescinded, and the ancillary plaintiffs should be held by the Court to be a constructive trustee of the shares of stock for the benefit of the reorganized corporation, and should be required to surrender the said stock to it on payment of such sum of money as the Court shall direct, and that the alleged sale

should be held to be a pledge for the protection of the 500 shares of prior preference stock.

The ancillary plaintiffs thereupon filed their motion for summary judgment under Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. This motion has been submitted and is now under consideration.

It is the contention of the ancillary defendants that there is a material issue on the question of the secret oral agreement which they allege was entered into between the defendants Curtis and the reorganization manager, which the ancillary plaintiffs deny, and hence rule 56 of the Rules of Civil Procedure does not apply. On the other hand, the contention of the ancillary plaintiffs is that any testimony of any such secret agreement would be wholly immaterial and incompetent and would not be permitted on the trial. This necessitates some consideration on the nature and validity of the alleged oral contract.

At the outset, we are confronted by the fact, clearly appearing of record, assuming that the oral contract was made, that the parties now claiming under this secret contract, agreed to and in fact did withhold all information pertaining thereto from the Court. From the record as it is now made, it appears that the plan and purpose was to practice a concealment or deception on the Court in the nature of a fraud. The contract of reorganization was not made by the parties to the oral contract, but by the Court. Its validity does not turn on whether there were representations, false or fraudulent, made between some of the stockholders and the reorganization manager, but rather whether or not the decree and orders of the Court were duly and legally entered. If we understand the contention of the ancillary defendants correctly, and we think we do, it is in substance that the Curtis family and the reorganization manager fraudulently agreed orally and secretly to practice a fraud upon the Court. Since the ancillary defendants were parties to this fraud, they are hardly in a position to come to that Court, or any other Court, seeking relief from their own perpetration of fraud and deception.

Aside from this consideration, we think the decrees entered on the 2nd and 18th days of July, 1935, are res adjudicata. What the ancillary defendants are now

seeking is that the Court shall now set aside its decrees, set aside the plan of reorganization, open up the proceedings, destroy a carefully prepared printed plan of reorganization, published and circularized, approved in writing by all of the parties now here involved, or their privies, and to adopt in lieu thereof, after this great lapse of time, a somewhat vague uncertain oral agreement, entered into by a few but not all of the stockholders. We find no warrant for such exercise of power or jurisdiction in the law. There comes a time in all litigation when the order of the Court is final, and bankruptcy is no exception to that rule. Bankruptcy Act of 1934, 77B, subs. g, h, 11 U.S.C.A. § 207, subs. g and h; Sections 226 and 228, Chapter 10, Bankruptcy Act of 1938, 11 U.S.C.A. §§ 626, 628; Finletter, Law of Bankruptcy Reorganization, p. 660; Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; In re Corona Radio & Television Corp., 7 Cir., 102 F.2d 959 (pars. 6, 7).

 The oral contract with the reorganization manager, in our view, cannot under any theory be held or construed as a reorganization plan or contract. Only the approval of the Court could give such an agreement validity in the reorganization proceedings. It is not claimed that the secret plan had the approval of the Court. In fact it would seem that its very purpose was to keep this secret understanding away from the disapproval of the Court, and consequently we conclude that any attempted agreement or contract or promise or pledge affecting the reorganization proceedings made by the reorganization manager without the Court's notice or approval was invalid, and would have no binding effect on anyone. St. Joseph Gas Co. v. Barker, D.C.Mo.1916, 243 F. 206; In re Avorn Dress Co., 2 Cir., 1935, 79 F.2d 337; Standard Capital Corp. v. Saper, 2 Cir., 1940, 115 F.2d 383; Northern Finance Corp. v. Byrnes, 8 Cir., 1925, 5 F.2d 11; Amalgamated Ass'n, etc., Ry. Employés v. Des Moines City Ry. Co., 8 Cir., 1926, 14 F.2d 836; Kansas City Terminal Ry. Co. v. Central Union Trust Co., 8 Cir., 1923, 294 F. 32; T. A. D. Jones Co. v. Winchester Repeating Arms Co., 2 Cir., 1932, 61 F.2d 774, certiorari denied Southeastern Investment Co. v. Tobler, 1933, 288 U.S. 609, 53 S.Ct. 401, 77 L.Ed. 983; Amick v. Hotz, 8 Cir., 1939, 101 F.2d 311, certiorari denied 1939, 307 U.S. 637, 59 S.Ct. 1033, 83 L.Ed. 1518; McNamara v. Hart, 8 Cir., 1936, 83

F.2d 649; Chicago Deposit Vault Co. v. McNulta, 1893, 153 U.S. 554, 14 S.Ct. 915, 38 L.Ed. 819; Darling v. Cornstalk Prod. Co., D.C.Ill.1931, 54 F.2d 670; Coy v. Title Guarantee & Trust Co., D.C.Or.1912, 198 F. 275; United States Mortgage & Trust Co. v. Missouri, K. & T. Ry. Co., 5 Cir., 1921, 269 F. 497; Erie Malleable Co. v. Standard Parts Co., 6 Cir., 1924, 299 F. 82.

 Having come to the conclusion that we now hold, we must further conclude that any evidence pertaining to the silent oral agreement would be wholly immaterial, and as a consequence there being no material issue presented from the record we now have, we must hold that the motion for summary judgment should be sustained, and it is so ordered. Exception will be allowed.

The attorneys for the ancillary plaintiffs will prepare appropriate findings of fact and conclusions of law in keeping with this memorandum.